May it please the Court, my name is Keith Bullock. Once again, I represent the Operative Classrooms at Mason's International Association and Classrooms Local 200. They are the petitioners in Case No. 12-70151 and cross-respondents in Case 12-70384. I will reserve five minutes to rebuttal and I will watch the clock. In these cases, the classrooms are seeking to have the Board's decision in order, which we commonly refer to as SDI 4, set aside. Now, I have three points to make in this argument. First is that SDI 4 is almost, but not entirely, dependent upon the resolution of the prior argument. That involves cases SDI 2 and SDI 3. Second, we bring a challenge to the broad order issued in SDI 4, and that challenge is not waived pursuant to Section 10e. And third, the Board's remedial order is overbroad. Now, with regard to my first point, I just wanted to note that if the Court were to set aside the 10k, under this Court's precedent in the operation of the Act, the 8b4d decision in Standard Drywall 3 and the 8b4d decision in Standard Drywall 4 would also have to be set aside. And also, the remedy in SDI 4 is dependent on SDI 3, because the Board specifically references the fact that there were repeated violations in Sections 3 and SDI 3 and SDI 4. But when I say almost, but not entirely, that is because we are challenging the broad order in SDI 4. So if this Court were to uphold the 10k award and SDI 3, so SDI 2 and SDI 3, we still have an argument with respect to SDI 4, and that is the broad order. I hope you'll forgive me, but I want to make sure you get a chance to answer my question about SDI 4 and about the order. I understand your argument about the breadth of that order. Yes. And I guess I have two questions. One is, my understanding is that part of your complaint is that the very broad order that was entered in SDI 4 was beyond anything that had been litigated. So it was a sua sponte, caught you by surprise kind of order. Is that right? That's correct. Okay. So then I understand that you did not seek to have that reconsidered. No motion for reconsideration was filed. That's correct. Okay. And my understanding of your argument, if I've got all these briefs straight, and there's a lot of briefs in this case, so please feel free to correct me if I'm wrong, but my understanding is that your position is that you didn't do that, didn't seek reconsideration, because there was somebody raced to the courthouse and beat you to the punch. So your client understood that jurisdiction had been vested in the Ninth Circuit. Is that right? Well, our argument is that one standard, yes, it is. Okay. And one standard drywall filed its petition for review. It started the process that transferred jurisdiction from the board to the court. Now, that process takes time, and the board retains concurrent jurisdiction until the record is filed with this court. So that's my question, counsel, right there. And you're going right to it, but I just want you to address the Painters, District 15, and if you could explain to me why doesn't that foreclose your argument here? Because there was concurrent jurisdiction, right? In Painters, yes, there's always concurrent jurisdiction, I suppose. In the Painters case, probably it's just about as confusing as this case, because you had two sets of employers and a union, all of whom were filing petitions for review and cross-review. And I don't think the court specifically addressed the set of circumstances that we find here today. From what I read of the decision, you know, the court makes note that the employer filed a petition for review, then the board filed a cross-application for review. There was no discussion that I saw, and I could be wrong, of any other petitions for review that were filed in that case. And what we're talking about here is we have an employer who, days after the board issues its decision, files a petition for review and starts the process. The board's record had to have been filed by February 12th, but they got two extensions. It was ultimately filed March 9th. Okay. So if we had filed the motion for reconsideration, the board would have had to decide that motion before March 9th. And it's our contention, and we point this out in our opposition to the motions for the SIR reply, that three recent examples of how long it takes the board to decide a motion for reconsideration range anywhere from 82 days to 238 days. Why would the board have had to decide by a particular date? Because the statute provides that once the record is with the court of appeals, the court of appeals has exclusive jurisdiction. Okay. So the board can't amend or alter its decision at that point. Okay. Well, maybe then I should ask my question differently. What if they hadn't? You still would have exhausted your remedy in front of the board, right? You would have done all you could do, and you wouldn't be in the position now where opposing counsel is arguing that there was a failure to file a motion for reconsideration that divests us of jurisdiction. Well, it's the placer's position that filing a motion for reconsideration that's never going to be, that could not be decided or might not end up being decided is a futile act. And it only slows down the ability for us to file our petition for review. It sets us further and further behind from the case that's already been filed.  Well, it's distinguishable on its facts. Legacy health involved a petition for review that was filed by, I believe it was the employer. The board filed a cross-petition for application first. I'm sorry, excuse me. The board filed an application for enforcement first. The employer files a petition for review afterwards. The filing of an application for enforcement is distinguishable. When the board files an application for enforcement, it brings the other party before this court. So I would be standing here, and we could file a motion to stay the proceedings while a motion for reconsideration was considered by the board. Here where you have a separate aggrieved party who files a petition for review, as the second aggrieved party, I don't have an ability to stay that case. And, I mean, I can't intervene in that case. Whose side am I going to intervene on? The board who's seeking to impose an order on me, or the employer who presumably is seeking to impose a broader order on me? So we're left out. And that's what, in the D.C. Circuit case, TMPS Local 115 v. NLRB, the D.C. Circuit recognized that there's an inherent unfairness that arises when one party races to the courthouse and leaves the other one stranded before the board. And under those circumstances, which the court itself notes are very limited, it's only when an aggrieved party files first, and the second aggrieved party is unable to file, that the extraordinary circumstances would apply. If you had filed a motion to reconsider, and if the NLRB had granted your motion to reconsider before March, we wouldn't be here. Or at least you wouldn't be here. Well, theoretically. Well, we would still probably be here on the merits, perhaps, but not on the remedy. Because we are still contesting whether or not we violated Section 84 of the Act in SDI 4. So we would not have necessarily a remedy. We wouldn't have this particular argument with respect to an overbroad order. The Teamsters Local 115 carved out an example that's on all floors with this case. And it simply allows the party who is stranded at the board to make the argument challenging the order. And in this case, the board clearly exceeded its bounds. Section 10C of the Act provides that the board has the authority to issue an order requiring such person to cease and desist from such unfair labor practices and to take affirmative action that will effectuate the policies of this subchapter. Now, there's nothing in SDI 3 or SDI 4 that there are no findings that the plasters, either the international or the local, took any actions against any employer or any other person other than standard drywall. And the Supreme Court in Communication Workers v. the NLRB struck down an order similar to this one that said any other person or employer on the basis that there was nothing in the record that showed that there was either a generalized scheme or that other individuals were the target of the union's conduct. The board never found any generalized scheme here. There's no findings that we made any attempts to file lawsuits, file plan arbitrations, or anything else with respect to employers other than SDI. Does SDI monopolize the drywall contracting business in Southern California, or are there such things as other contractors? There are other contractors. Did you sue any of them? That's not in the record. I assume they have. But the thing is SDI is different than every other contractor because there's a 10-K award that's been issued with respect to SDI's plastering work. Those other contractors don't have 10-K awards. By example, the case that we provided in the Supplemental Authority that was recently decided by the D.C. Circuit, you had Frye and Jordan, Frye Construction and Jordan Interiors. They are two other contractors in Southern California. And the carpenters in that case brought the issue of this court's decisions in small and the board's 10-K orders to the attention of the court. And the court specifically noted that with Frye and Jordan, they did not have a 10-K award issued with respect to their work, and so that's why the cases didn't apply. I want to make one final note, then I'm going to reserve the rest of my time with respect for rebuttal. This court has followed the Communication Workers Analysis when it comes to or any other in-person or employer. And it did so in two cases that we cited in our brief. It's Teamsters v. NLRB, Local 85. That's 458F222. That was decided back in 1972. And the NLRB v. Plumbers and Pipefitters Local 469 case, 300F649. So without any other evidence of actions taken by the platform with respect to other employers in the similar circumstances as this one, where we were alleged to have violated the act by engaging in conduct that undermined a 10-K award, there's no basis for the broad order. I thank the Court. I'll reserve the rest of my time for rebuttal. Hello again, Your Honors. Julie Bardo representing the National Labor Relations Board in what we call SDI 4, which concerns the second Greenberg arbitration award issued in 2009, where the Plasters obtained or attempted to obtain work at two job sites covered by the second 10-K award and also tried to get court enforcement of that award. The Plasters don't contest the Board's finding that that arbitration award, the pursuit of that award, and the counterclaim seeking to enforce the award contravenes the Board's Section 10-K decision in the December 2006 decision. So on that basis, it's very different from the Jordan case in the D.C. Circuit, where I might note that the D.C. Circuit did note the fundamental principle that when the Board has issued a 10-K award, it trumps a contrary arbitration award. The nub of the dispute in this case, of course, is the Plasters' untimely attempt to challenge the remedial order that the Board adopted sua sponte. This was not the order that Standard Drywall had even requested in the third SDI case. It was something that the Board on its own decided to issue. And when the Board issued that order on December 31, 2006, the Plasters had 28 days to file a motion for reconsideration contesting that order. The Plasters didn't do that. And under Section 10-E of the Act, the court therefore lacks jurisdiction to consider any belatedly raised appellate challenge to that order. This is crystal clear from Supreme Court precedent, Wolke and Romero, Quality Manufacturing Footnote 4, that a party must raise an issue before the Board absent extraordinary circumstances. And I do not believe that the fact that Standard Drywall filed a petition for review presents such an extraordinary circumstance because under Section 10-D of the Act, as the court recognizes, the Board and the court retain concurrent jurisdiction until the record is filed. And the record had not been filed by the time that 28-day time period had lapsed. The case argument is that it would be fair. Counsel, do legacy health systems apply in this situation? It certainly does, Your Honor, because Which way does it cut? Well, it supports the Board's position, as the Board noted in its brief, because it recognizes that the mandate of Section 10-D of the Act, which provides that the Board maintains concurrent jurisdiction. Now, Mr. Bolick tells us that it's distinguishable. What is your response to his argument? Well, the distinctions that he noted, I would submit, are distinctions without a difference. It doesn't matter how the case gets into court, whether it's by a petition for review or an application for enforcement. The crucial fact is that until the record is filed, which here didn't happen until March 9th, which was well after the 28-day period had expired, the Board and the court share concurrent jurisdiction. And certainly if the plasters had filed a timely motion for reconsideration with the Board, then the Board would have filed a motion, as it has done many times in this Court and other courts, asking to hold in abeyance the filing of the record until the motion for reconsideration can be decided. And that's how the statutory scheme is supposed to work and does work. Is there a regulation that requires the Board to seek a stay of the petition for review in the circuit court whilst the record is prepared? No, there is not, but it's the Board's practice. And just while I was preparing the supplemental brief, just glancing back at some of the past cases where this situation has ‑‑ it does come up a fair amount. We did cite a few examples of that where the Board ‑‑ I mean, the Board is not trying to prevent a party from having its stay before the Board, its stay in the agency. That certainly is appropriate. That is the relief that a party is supposed to seek when the Board sui sponte. Well, did the Board give the parties an opportunity to file briefing or supplemental briefing on this issue before it issued? His view is that this was entirely sui sponte. It was. It absolutely was. But there was no opportunity to have a say according to opposing counsel. But that's what the motion for reconsideration is for. The motion is in the nature of a brief where the parties can present arguments on the issues. There's a motion and a response and a reply. Yes, I understand, counsel. I'm just responding to your comment that the Board was ‑‑ that there was an opportunity to have a say. His whole argument is that there was no opportunity. And the Board's position is that ‑‑ It's procedurally barred. It's procedurally barred because the Plasters did have an opportunity when the case was before the Board. I understand. Thank you. Do you understand the ‑‑ and maybe I should ask this to Mr. Bullock. Is there a claim here that any petition for reconsideration before the Board would have been futile? I don't think he's claiming that. And there's certainly no evidence of that. I mean, it does. It strikes me as somewhat odd that the Board so responding would come up with this broad rule, including a prohibition of any actions as to other persons and employers. Absent any evidence that other persons or employers had been subject to actions similar to the Pollen lawsuit or the tortious interference lawsuit or the Kelley or Gienberg arbitrations, would that lead a reasonable person to believe that if the NLRB is so responding, coming up with an order like this, there's no use trying to get it to reconsider? I don't think so, Your Honor. Your Honor, I think by just the way you've posed the question, would lead a reasonable litigant to want to pose that question to the Board as to why, you know, challenging the order. And that just wasn't done here, and I can't really speculate as to what the Board might have said had a timely motion for reconsideration been filed. The Board has issued broad orders in other cases that they cited in their decision here, but not ones involving multiple 10-K awards and repeated attempts to thwart and undermine a 10-K award. Has the Board ever granted a motion for reconsideration and narrowed a ruling from a board? Oh, absolutely. Yes, in fact, it has. Counsel, I'm interested to know whether the Communications Workers of America case, Supreme Court, tells us anything here. What troubles me is that there was no evidence that the plasterers were dealing with other employers or anybody else. So couldn't the determination be infirmed for that reason? Well, that is, again, Your Honor, a claim that had you been representing the plasterers, that an argument that might have been made before the Board, but no such argument was made. So I can't speculate on how the Board might have distinguished that case because it just wasn't presented to the Board. So your argument is that communications workers may or may not apply, but it's too late. It is too late in this case. All right. If the Court has no further questions. Thank you. I'd like to point out, again, this is Mark Bennett representing Standard Drywall. I'd like to point out that plasterers don't dispute the award other than the inclusion of the other employer language in there. The breadth of the award as to Standard Drywall they do not dispute. And that was basically the award that we asked for in our brief. I want to also point out that under 10E and 10F, I mean, under 10E of the Act, which is 160, 29 U.S.C. 60, 29 U.S.C. section 160E and 29 U.S.C. 160F, petitions for review and petitions for enforcement are basically handled by the same procedural grounds. That's what the Act says. I'm having difficulty. I don't understand what candle you have at this wake. You've got what you want. You've got what you want. What do you care about other employers and other persons? I think this I think I think I quite frankly think the board was correct. I mean, they were the egregious nature of what this union was doing. But as an interested observer of the body public, not as a litigant. Well, I, right. Standard Drywall will have what it's going to have. So why are you arguing for a broad ruling that doesn't help you? Well, it does help me. I mean, it does. Oh. Because it's. You're not another person or another employer, are you? It is. It is. The point here is that the court, if they didn't hit the 21, they didn't file a request for reconsideration, the court doesn't have jurisdiction to consider their argument. It's a jurisdictional issue. And I. But that's been said by Ms. Broido. Right. That's not Judge Bea's question. His question is, and frankly, I share it. What's your dog in this fight? It's, you know, it doesn't quite, as other employers, but I think that the awards, it's appropriate. I think it's appropriate under these circumstances. And also, there really is no defense to the finding of an unfair labor practice in this case because those plan awards plainly required Standard Drywall to reassign plastering work on those two projects. The use of the word appropriate is a last refuge of the subjective. But that is, and I don't think there's really any question here that the board was correct in both, in the remedy that it made in this case. And the attorney's fee issue, which has been brought up, that comes right out of Bill Johnson's. attorney's fees when a lawsuit is illegal, which is, or an award is illegal. So, you know, there really is no defense to the award in this case. Thank you. Just a few points. First, we do dispute the order as a whole in plaster's local, in SDI 4. We're saying that we didn't violate the act. No order should have been issued in the first instance. And, by extension, the fact that they added, or any other person or employer, is another grounds upon which we're challenging it. Is there any authority for the notion that your position is that there was no support for this phrase, or any other person or employer? Is there any support at all for the notion that the breadth of the order, the sous-spontane nature of the order constitutes exceptional circumstances that would excuse the filing of a motion for reconsideration? Are you making that argument? No. I don't, personally, I don't know if there is any. That's not our argument. Is your argument futility? What is your argument? Our argument, and that goes to, our argument, it goes to futility, in essence. Because, as Ms. Breidel pointed out, you file a motion for reconsideration, you get a response, and then you get a reply. By the time all of that's done, and the board has the case before it, the record's already at the court. So the board can't issue a decision. Well, she said they would seek a stay. But there's nothing in American jurisprudence that requires one party to place their fate in the hands of their adversary in a case to which we have no say. We're not before the court in the, what was case 12-70086. We were still at the board. We would have to place our fate, in terms of our ability to go forward, in the hands of the board. There's no regulation that provides for it. There's nothing that says that we should. They are an adversary. They're seeking to oppose an order on us. And we could hope that the benevolence of the appellate branch will seek the stay and allow us to finish. But there's nothing that requires us to do that. And I noted in my principal argument with regards to our opposition to this reply, we cited three cases that showed a futility because of the length of time it took for the board to decide those cases, anywhere from 82 days to, I think it was, 236. And that's long after the record in this case went up. It was 41 days from the end of January 28th. So, assuming that we filed our motion on the last day that was available, and March 9th, when the record went to the board. That was 41 days, if I got my math right. So, and then, when you consider the fact that you would have to file, there would be a response. And I have no doubt that Standard Drywall or the Southern Regional Council of Carpenters would file a response, which would then merit a reply from us by the time the briefing gets done. I don't know what the timelines are off the top of my head for that, but I'm willing to say that takes us through February. And so then the record goes up on March 9th. Is there any strategic reason not to file a motion to reconsider? Yes, there is. Because if we file a motion for reconsideration, then it makes it more difficult for us to file a petition for review. The other case is going forward. When it gets docketed with this court, you get the scheduling order, and everything proceeds. But if we file a motion for reconsideration, our argument is that the order is too broad. We have to wait for the board to make its decision. Meanwhile, the other case keeps going and going and going. And then they could easily have finished their briefing before we get our chance to get before the court. So that's what the D.C. Circuit focused on in CMS Local 115. They know that there was two considerations. One is the fundamental fairness of the party being stranded at the board. And the other one is that for the party who filed, they have to wait until the board decides before they get their arguments heard. So when you say it's more difficult, you're referring to the delay? Yes. So for each side, there's unfairness and sort of an inefficiency argument. And so that's why the court said, in this limited circumstance, we'll find that there were extraordinary circumstances and allow the petitions to proceed. And then the court decided the issues in that case. If there are no further questions, I thank the court for its time. All right. Now, we thank you very much again. And we mark both cases. Thank you.
judges: O'scannlain, Bea, Christen